IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | 1:06-mc-00128-RBW |
| v. ) | |
| ) | (CR. No. 05-394 (RBW)) |
| I. LEWIS LIBBY, ) | |
| also known as "Scooter Libby" ) | Oral argument requested |
| ) | |
| TIME INC., | |
| Movant. | |

## MOTION TO QUASH OR MODIFY SUBPOENA TO TIME INC.

Pursuant to Fed. R. Crim. P. 17(c), Time Inc. respectfully moves this Court to quash or modify the subpoena issued to it by Defendant I. Lewis "Scooter" Libby. As set forth in the attached Memorandum of Law, the subpoena should be quashed or modified as overbroad, unreasonable and burdensome under Federal Rule of Criminal Procedure 17(c), and also because it seeks information protected by the reporter's privilege that exists under the First Amendment to the United States Constitution as well as the common law and Federal Rule of Evidence 501.

A proposed order is attached hereto. Time Inc. respectfully requests oral argument.

Dated: April 18, 2006                     Respectfully submitted,

|  |  |
|---|---|
| | /s/ |
| Robin Bierstedt | Theodore J. Boutrous, Jr. |
| Andrew Lachow | D.C. Bar No. 420440 |
| Time Inc. | Thomas H. Dupree, Jr. |
| 1271 Avenue of the Americas | D.C. Bar No. 467195 |
| Room 38-45 | GIBSON, DUNN & CRUTCHER LLP |
| New York, NY 10020 | 1050 Connecticut Avenue N.W. |
| (212) 522-3217 | Washington, DC 20036 |
| | Telephone: (202) 955-8500 |
| | Fax: (202) 530-9689 |
| | |
| | *Attorneys for Time Inc.* |

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | 1:06-mc-00128-RBW |
| v. | ) | |
| | ) | (CR. No. 05-394 (RBW)) |
| I. LEWIS LIBBY, | ) | |
|     also known as "Scooter Libby" | ) | Oral argument requested |
| | ) | |
| TIME INC., | | |
|     Movant. | | |

**MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF TIME'S MOTION TO QUASH OR MODIFY**

Time Inc. ("Time") respectfully submits this memorandum of points and authorities in support of its motion to quash or modify the subpoena issued to it by Defendant I. Lewis "Scooter" Libby.

## INTRODUCTION

On March 14, 2006, Mr. Libby served Time with a subpoena, attached as Exhibit A, demanding that Time produce documents in its possession concerning former Ambassador Joseph Wilson or his wife, Valerie Plame Wilson. The requests encompass, for example, documents reflecting conversations between employees of Time Inc. *about* the Wilsons, or between employees of Time Inc. and their sources. The requests are not limited to documents concerning TIME magazine reporter Matthew Cooper—the sole Time employee identified as a potential witness in this case—but include communications to or from "*any* employee or agent of Time Inc."

Mr. Libby has already received from the Special Counsel copies of the documents produced by Time to the Special Counsel in response to grand jury subpoenas. Mr. Libby also has Mr. Cooper's published articles detailing his grand jury testimony. *See* Matthew Cooper,

*What I Told the Grand Jury*, TIME, July 25, 2005, at 38; Matthew Cooper, *What Scooter Libby and I Talked About*, TIME, Nov. 7, 2005, at 42. Mr. Libby has failed to show that he needs any other documents in order to defend himself, and the documents demanded by his subpoena have little if any relevance to the issues presented in this prosecution for perjury, false statements and obstruction of justice. Rule 17 cannot be used for discovery or as the basis for a fishing expedition, and its requirement of reasonableness must be applied strictly where, as here, the subpoena infringes on the First Amendment rights of reporters and news organizations. Accordingly, the subpoena should be quashed or modified as overbroad, unreasonable and burdensome pursuant to Federal Rule of Criminal Procedure 17(c).

Moreover, the subpoena demands materials, including interview notes and draft articles reflecting editorial suggestions, that are squarely protected by the reporter's privilege recognized under both the First Amendment and common law. *See Zerilli v. Smith*, 656 F.2d 705, 711 (D.C. Cir. 1981); *United States v. Cuthbertson*, 630 F.2d 139, 147 (3d Cir. 1980); *In re Grand Jury Subpoena to Judith Miller*, 397 F.3d 964, 991-1001 (D.C. Cir. 2005) (Tatel, J., concurring). For this reason as well, the subpoena should be quashed or modified.

**ARGUMENT**

**I.    THE SUBPOENA IS UNREASONABLE AND OPPRESSIVE BECAUSE IT DEMANDS DOCUMENTS THAT ARE NOT RELEVANT TO THE ISSUES IN THIS CASE.**

Federal Rule of Criminal Procedure 17(c)(2) provides that a court may quash a subpoena "if compliance would be unreasonable or oppressive." In *United States v. Nixon*, 418 U.S. 683 (1974), the Court explained that "the subpoena duces tecum in criminal cases . . . was not intended to provide a means of discovery," but was meant "to expedite the trial by providing a time and place before trial for the inspection of subpoenaed materials." *Id*. at 698-99 (citing *Bowman Dairy Co. v. United States*, 341 U.S. 214, 220 (1951)). The party seeking to enforce the

2

subpoena, "to carry his burden, must clear three hurdles: (1) relevancy; (2) admissibility; (3) specificity." *Nixon*, 418 U.S. at 700.

As the D.C. Circuit explained in *United States v. Haldeman*, 559 F.2d 31 (D.C. Cir. 1976), Rule 17(c) "is not a discovery device, confines a subpoena duces tecum to admissible evidence, authorizes the quashing of a subpoena if it is 'unreasonable or oppressive,' and indulges pretrial inspection of subpoenaed papers only upon a showing" by the issuing party that the *Nixon* requirements are satisfied. *Id*. at 75 (footnotes omitted). Similarly, in *United States v. Brooks*, 966 F.2d 1500, 1505 (D.C. Cir. 1992), the court affirmed the district court's quashing of a subpoena duces tecum under Rule 17(c) on the ground that the defendant "was improperly trying to use the subpoena as a discovery tool." *See also United States v. North*, 708 F. Supp. 402, 404 (D.D.C. 1989) (quashing subpoena where "the standards of relevance, materiality and necessity" are not satisfied); *United States v. Ferguson*, 37 F.R.D. 6, 7-8 (D.D.C. 1965) ("Rule 17 is not a rule for discovery."); *United States v. Carter*, 15 F.R.D. 367, 369 (D.D.C. 1954) ("a subpoena duces tecum may be used only for the production of documents that are admissible in evidence" and "may not be used for the purpose of discovery, either to ascertain the existence of documentary evidence, or to pry into the case of the prosecution").

Courts have recognized that Rule 17(c)'s reasonableness test must be applied strictly in cases where, as here, significant First Amendment interests are at stake. In *In re Grand Jury Subpoena: Subpoena Duces Tecum*, 829 F.2d 1291 (4th Cir. 1987), for example, the court quashed a grand jury subpoena under Rule 17(c) that demanded production of videotapes allegedly containing obscene content. The court held that "[e]ven when the first amendment . . . problems raised by subpoenas duces tecum do not, in and of themselves, rise to the level of constitutional violations, the concerns that underlie those constitutional provisions must enter

into the balancing of interests that is required by a motion to quash under Fed. R. Crim. P. 17(c)." *Id*. at 1300. The court emphasized that "[t]he traditional requirements for reviewing subpoenas duces tecum against charges of burdensomeness must be applied with greater care in cases such as these." *Id*. at 1301. *See also United States v. R. Enterprises, Inc*., 498 U.S. 292, 303 (1991) (directing court of appeals to consider on remand whether First Amendment implications required heightened scrutiny of grand jury subpoena under Rule 17(c)).

The subpoena in this case manifestly fails the tests of relevance, admissibility and specificity, particularly when the strong First Amendment interests at stake are factored into the calculus. *First*, the subpoena demands documents that have little to no relevance to the allegations and issues in this case. For example, the requests are not limited to documents created or received by Matthew Cooper—most if not all of which Mr. Libby already has—and there is no reason why documents possessed by other reporters and editors would be relevant. The gist of the indictment in this case is that Mr. Libby made false statements to the grand jury and FBI concerning what he knew and said when he spoke with Mr. Cooper and certain other journalists about Valerie Plame Wilson. Documents concerning information possessed by Time reporters or editors other than Mr. Cooper can have no bearing on what Mr. Libby knew or said in those conversations and thus cannot be obtained by a Rule 17 subpoena. *See In re Sealed Case*, 121 F.3d 729, 754-55 (D.C. Cir. 1997) ("Rule 17(c) precludes use of a trial subpoena to obtain evidence that is not relevant to the charges being prosecuted or where the claim that subpoenaed materials will contain such evidence represents mere speculation.").

Although Mr. Libby has claimed a right to know what information the press corps in general possessed concerning Mrs. Wilson's affiliation with the CIA, under that theory he would be entitled to subpoena *all* reporters in Washington to learn what they knew, and when they

4

knew it. There is no stopping point to this approach. This is a classic example of a defendant impermissibly using a Rule 17 subpoena as a discovery tool, in that Mr. Libby is plainly seeking to learn about communications that *may* have occurred and documents that *may* exist—rather than request that specific documents be produced. It is well-settled that Rule 17 does not provide a basis for this type of fishing expedition. *See United States v. Nixon*, 418 U.S. at 698 (subpoena duces tecum "was not intended to provide a means of discovery for criminal cases"); *Cuthbertson*, 630 F.2d at 144 ("Courts must be careful that Rule 17(c) is not turned into a broad discovery device, thereby undercutting the strict limitation of discovery in criminal cases found in Fed. R. Crim. P. 16.").

It is no answer to say that the material might be relevant for impeachment purposes, as potentially contradictory statements "ripen into evidentiary material for purposes of impeachment only if and when the witness testifies at trial." *Cuthbertson*, 630 F.2d at 144. Thus, "impeachment statements, although subject to subpoena under Rule 17(c), generally are not subject to production and inspection by [the defendant] prior to trial." *Id.*; *see also Nixon*, 418 U.S. at 701 ("Generally the need for evidence to impeach witnesses is insufficient to require its production in advance of trial.").

*Second*, the subpoena is unduly burdensome and oppressive in that it intrudes on and disrupts newsgathering activities protected under the First Amendment. The subpoena demands, among other things, communications between reporters and editors, as well as communications between reporters and sources. The subpoena also demands draft articles, unpublished notes and information collected in the course of newsgathering, and would reveal the thought processes of reporters and editors in discussing, writing and editing news stories—including articles that post-date events at issue in the indictment by more than two years, such as Mr. Cooper's two articles

5

about his own grand jury testimony. In *Zerilli*, 656 F.2d at 711 & n.39, the D.C. Circuit noted that "[t]he Supreme Court explicitly acknowledged the existence of First Amendment protection for newsgathering" in *Branzburg v. Hayes*, 408 U.S. 665, 681, 707 (1972). Permitting the compelled disclosure of these documents would unduly burden newsgathering and chill communications between reporters and their editors and sources. As the Third Circuit has explained:

> The compelled production of a reporter's resource materials can constitute a significant intrusion into the newsgathering and editorial processes. Like the compelled disclosure of confidential sources, it may substantially undercut the public policy favoring the free flow of information to the public . . . .

*Cuthbertson*, 630 F.2d at 147 (citations omitted).[1]

## II. THE SUBPOENA DEMANDS DOCUMENTS PROTECTED BY THE REPORTER'S PRIVILEGE.

In addition to failing the reasonableness standard enshrined in Rule 17(c)(2), the subpoena seeks material protected by the reporter's privilege, and should be quashed or modified for this reason as well. As discussed below, there are two bases for the reporter's privilege: the First Amendment and the common law. Both apply to this case, and both encompass and protect the documents demanded by the subpoena from forced disclosure.

---

[1] The subpoena is also insufficiently specific. Request #2, for example, demands "[a]ll documents, whenever prepared or received, indicating or suggesting that any employee or agent of Time Inc. other than Matthew Cooper was aware prior to July 14, 2003 that the wife of former Ambassador Joseph Wilson was employed by the CIA." This request purports to require Time to make a determination of whether a document "suggest[s]" that an agent of Time had a particular piece of knowledge. As the Fourth Circuit has explained, a subpoena fails the specificity requirement when it forces the recipient to "make judgment calls" about whether particular documents would be responsive, "at the risk of a civil contempt conviction" if a court later determines that the line should have been drawn in a different place. *In re Grand Jury Subpoena: Subpoena Duces Tecum*, 829 F.2d at 1301.

### A. Compelled Disclosure Is Barred By *Zerilli* And Other Decisions Recognizing A Reporter's Privilege Under The First Amendment.

In *Zerilli*, the D.C. Circuit recognized a qualified First Amendment reporter's privilege applicable in civil cases. The court emphasized that compelled disclosure "raises obvious First Amendment problems" in that "the press' function as a vital source of information is weakened whenever the ability of journalists to gather news is impaired." 656 F.2d at 710-11. "Without an unfettered press, citizens would be far less able to make informed political, social, and economic choices." *Id*. at 711. The court explained that in *Carey v. Hume*, 492 F.2d 631 (D.C. Cir. 1974), it had recognized that "a qualified reporter's privilege under the First Amendment should be readily available in civil cases," and that "to determine whether the privilege applies courts should look to the facts of each case, weighing the public interest in protecting the reporter's sources against the private interest in compelling disclosure." 656 F.2d at 712. Emphasizing "the preferred position of the First Amendment and the importance of a vigorous press," the court stated that "[e]fforts will be taken to minimize impingement upon the reporter's ability to gather news." *Id*. At least with regard to civil cases, "if the privilege does not prevail in all but the most exceptional cases, its value will be substantially diminished." *Id*.

In *United States v. Hubbard*, 493 F. Supp. 202 (D.D.C. 1979), the district court recognized and applied the reporter's privilege in a criminal proceeding, quashing a subpoena duces tecum that the defendant had issued to a *Washington Post* reporter. Emphasizing the importance of the privilege to "our cherished first amendment goals," the court held that "the reporter's privilege must encompass all news gathering efforts," even when the information is sought in the context of a criminal proceeding. *Id*. at 205. "Accordingly, the reporter is protected from the subpoena power of a criminal defendant unless the information is necessary to

7

a fair hearing and there are no alternative avenues for access to the information in the reporter's possession." *Id*.

The *Hubbard* court recognized that this result was not foreclosed by the Supreme Court's decision in *Branzburg*, which focused on the grand jury context. The D.C. Circuit later confirmed this view, stating in *Zerilli* that the *Branzburg* Court "indicated that a qualified privilege would be available in some circumstances ***even where a reporter is called before a grand jury to testify***." 656 F.2d at 711 (emphasis added). *See also United States v. Ahn*, 231 F.3d 26, 37 (D.C. Cir. 2000) (affirming district court's decision to quash criminal defense subpoena to journalists on basis of reporter's privilege, when "the reporters' testimony was not 'essential and crucial' to [the defendant's] case and was not relevant to determining [his] guilt or innocence"); *Grunseth v. Marriott Corp.*, 868 F. Supp. 333, 334 (D.D.C. 1994) (in *Branzburg*, "the Supreme Court held that even though a journalist does not have an absolute privilege under the First Amendment to refuse to disclose confidential sources to a grand jury conducting a criminal investigation, some First Amendment protection must be accorded to the press and its newsgathering activities").[2]

The instant subpoena fails the First Amendment test. In *Zerilli*, the court held that a party is not entitled to compel disclosure from a reporter unless he can demonstrate that the information the journalist possesses is of "central importance" to the proceeding: that is, that it

---

[2] Although the D.C. Circuit declined to apply a First Amendment privilege in *In re Grand Jury Subpoena to Judith Miller*, 397 F.3d 964 (D.C. Cir. 2005), that case arose in the context of a grand jury subpoena and does not preclude application of the privilege with regard to a trial subpoena. Similarly, although the court in *United States v. Liddy*, 354 F. Supp. 208 (D.D.C. 1972), declined to recognize a privilege, its narrow interpretation of *Branzburg* has since been superseded by the D.C. Circuit's later decision in *Zerilli*.

would be "crucial to" the case and go to "the heart of the matter." 656 F.2d at 713 (quotation omitted). Likewise, in *Hubbard*, the court held that the information must be "necessary to a fair hearing," 493 F. Supp. at 205; *see also Ahn*, 231 F.3d at 37 ("reporters' testimony" must be "'essential and crucial' to [the defendant's] case"). In this case, in sharp contrast, the information demanded by the subpoena plainly does not go to "the heart of the matter" and is not "necessary," "essential," or "crucial" to enable Libby to present a defense. To the contrary, as explained above, the information is peripheral at best to the actual issues in this case.

The documents demanded by the subpoena in this case fall squarely within the protections of the privilege. Although *Zerilli* and other cases involve the identities of confidential sources, the reporter's privilege extends beyond the identity of news sources to protect other unpublished materials and information. *See, e.g.*, *Cuthbertson*, 630 F.2d at 147 (holding that First Amendment protection "extends to unpublished materials," including "a reporter's resource materials"); *Hutira v. Islamic Republic of Iran*, 211 F. Supp. 2d 115 (D.D.C. 2002) (privilege protects non-confidential information from disclosure); *NLRB v. Mortensen*, 701 F. Supp. 244, 247 (D.D.C. 1988) (the "contention that this discovery is beyond First Amendment concern because it does not seek to identify confidential sources is a misconception of the scope of the free press interest."); *Palandjian v. Pahlavi*, 103 F.R.D. 410, 412 (D.D.C. 1984) (privilege shields compelled disclosure of non-confidential notes); *Maughan v. NL Indus.*, 524 F. Supp. 93, 95 (D.D.C. 1981) (quashing subpoena for reporter's notes involving no confidential source issues).

**B.   The Common Law Reporter's Privilege Also Requires That The Subpoena Be Quashed Or Modified.**

Federal Rule of Evidence 501 commands federal courts to develop new common law privileges as appropriate in light of "reason and experience." In *Jaffee v. Redmond*, 518 U.S. 1

(1996), the Supreme Court recognized a psychotherapist-patient privilege, applicable to social workers, by reference to three factors: (1) whether such a privilege is widely recognized by the states; (2) whether the proposed privilege serves significant public and private interests; and (3) whether recognition of those interests outweighs the burden on truth-seeking that might be imposed by the privilege. Application of those factors virtually compels recognition of a common law reporter's privilege.

While the D.C. Circuit did not resolve the issue in *In re Grand Jury Subpoena to Judith Miller*, 397 F.3d 964 (D.C. Cir. 2005), Judge Tatel explained why *Jaffee* compels recognition of a reporter's privilege. *Id*. at 991-1001. The Third Circuit, among other courts, has reached the same conclusion and recognized a common law reporter's privilege applicable in criminal as well as civil cases. *See Cuthbertson*, 630 F.2d at 146 ("journalists have a federal common-law qualified privilege arising under Fed. R. Evid. 501 to refuse to divulge their confidential sources").

As Judge Tatel correctly concluded, "reason and experience" support recognition of a reporter's privilege, for absent a privilege, "the press's truth-seeking function would be severely impaired." 397 F.3d at 991. All three *Jaffee* factors weigh strongly in favor of a privilege. *First*, the reporter's privilege is overwhelmingly recognized by the states, as forty-nine states, as well as the District of Columbia, have now recognized a reporter's privilege. Thirty-one of these states and the District of Columbia have done so by enacting statutes, commonly referred to as "shield laws." *See, e.g*., D.C. Code § 16-4702 (extending protection to unpublished information). The remainder have done so by judicial decision. *See In re Grand Jury Subpoena to Judith Miller*, 397 F.3d at 993-94 (Tatel, J., concurring). "[T]he existence of a consensus among the States indicates that 'reason and experience' support recognition of the privilege."

*Jaffee*, 518 U.S. at 13. *Jaffee* further recognized that because "any State's promise of confidentiality would have little value if the patient were aware that the privilege would not be honored in a federal court," the "[d]enial of the federal privilege . . . would frustrate the purposes of the state legislation that was enacted to foster these confidential communications." 518 U.S. at 13 (footnote omitted). So too here: any state's creation of a reporter's privilege has little value if the federal courts do not also honor the privilege.

*Second*, freedom of the press furthers "a public good of transcendent importance." *Jaffee*, 518 U.S. at 11. It was established "not for the benefit of the press so much as for the benefit of all of us." *Time, Inc. v. Hill*, 385 U.S. 374, 389 (1967). As the Supreme Court has recognized, the press "has been a mighty catalyst in awakening public interest in governmental affairs, exposing corruption among public officers and employees and generally informing the citizenry of public events and occurrences." *Estes v. Texas*, 381 U.S. 532, 539 (1965).

*Third*, these interests outweigh any likely evidentiary benefits that would result from denial of the privilege, as the Supreme Court has found with regard to other privileges. *See Jaffee*, 518 U.S. at 11-12 (psychotherapist privilege); *Swidler & Berlin v. United States*, 524 U.S. 399, 407-08 (1998) (attorney-client privilege). The same is true regarding the reporter's privilege. Given the amount of "evidence" that is "unlikely to come into being" absent a reporter's privilege, "the likely evidentiary benefit that would result from the denial of the privilege is modest." *Jaffee*, 518 U.S. at 11, 24.

For all these reasons, there exists a common law reporter's privilege that at the very least requires a showing that, before journalists may be compelled to disclose unpublished materials that relate to the editorial process, there must be a showing that the information is crucial to the case and unavailable from other sources, and that the need for disclosure outweighs the public

11

interest in the free flow of information through the dissemination of news. *See In re Grand Jury Subpoena to Judith Miller*, 397 F.3d at 999-1000 (Tatel, J., concurring). Mr. Libby has not and cannot meet that standard here.

## PRAYER FOR RELIEF

This Court should quash or modify the subpoena and award Time Inc. all other relief to which it may be justly entitled.

Dated: April 18, 2006                    Respectfully submitted,

                                         _____/s/_____
Robin Bierstedt                          Theodore J. Boutrous, Jr.
Andrew Lachow                            D.C. Bar No. 420440
Time Inc.                                Thomas H. Dupree, Jr.
1271 Avenue of the Americas              D.C. Bar No. 467195
Room 38-45                               GIBSON, DUNN & CRUTCHER LLP
New York, NY  10020                      1050 Connecticut Avenue N.W.
(212) 522-3217                           Washington, DC  20036
                                         Telephone: (202) 955-8500
                                         Fax: (202) 530-9689

                                         *Attorneys for Time Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on this 18th day of April, 2006, I caused a true and correct copy of the foregoing to be sent to the following via overnight mail:

>Patrick Fitzgerald
>U.S. DEPARTMENT OF JUSTICE
>1400 New York Avenue, N.W.
>Room 12-405
>Washington, D.C. 20005
>
>Theodore V. Wells, Jr.
>Paul, Weiss, Rifkind, Wharton & Garrison LLP
>1285 Avenue of the Americas
>New York, NY 10019-6064
>
>William H. Jeffress, Jr.
>BAKER BOTTS L.L.P.
>1299 Pennsylvania Avenue, N.W.
>The Warner
>Washington, D.C. 20004

_____/s/_____
Thomas H. Dupree, Jr.